IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 21, 2016

**CORDELL L. BUTLER v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2013-C-2570     Steve R. Dozier, Judge**

**No. M2015-01708-CCA-R3-PC – Filed April 6, 2017**

The Petitioner, Cordell L. Butler, filed in the Davidson County Criminal Court a petition for post-conviction relief from his convictions of conspiracy to sell over fifty grams of hydromorphone and possession of over fifty grams of hydromorphone. The Petitioner alleged that his trial counsel was ineffective and that his guilty pleas were not knowing and voluntary. The post-conviction court denied the petition, and the Petitioner appeals. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and TIMOTHY L. EASTER, JJ., joined.

Holly L. Troutman, Nashville, Tennessee, for the Appellant, Cordell L. Butler.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Glenn R. Funk, District Attorney General; and J. Wesley King and Edward S. Ryan, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

The Petitioner was charged with conspiracy to sell fifty grams or more of a substance containing hydromorphone, a Schedule II controlled substance, within a school zone; possession of fifty grams or more of a substance containing hydromorphone with intent to sell within a school zone; and being a convicted felon in possession of a weapon. The potential sentence for each drug offense was sixty years, and the weapon offense had

a potential sentence of three to fifteen years.  In exchange for the dismissal of the weapon charge and the school zone enhancement, the Petitioner agreed to plead guilty to conspiracy to sell over fifty grams of hydromorphone and possession of over fifty grams of hydromorphone, Class A felonies.  The plea agreement provided that the Petitioner would be sentenced as an especially mitigated offender to concurrent sentences of twenty years for each offense and that he would be eligible for release after serving twenty percent of the sentences in confinement.

At the June 19, 2014 guilty plea hearing, the Petitioner told the trial court that he understood the plea agreement, that he knew the rights he was waiving by entering his guilty pleas, that his guilty pleas were not the result of threats, and that he was satisfied with trial counsel.  The State recited the following factual basis for the pleas:

> [I]f the State's witnesses were called to testify, they would testify that with regard to count one, conspiracy charges, police were investigating a drug conspiracy that began in June of 2012 through May of 2013 where co-defendants James Hannah, Ricky Vaughn and others were selling large quantities of Dilaudid pills.  The [Petitioner] from time to time assisted that conspiracy on some occasions he could transport the defendants to the Nashville airport for [the] purpose of them going out of town to pick up the pills.
>
> [Regarding the possession charges,] on April 10th, 2010, [the Petitioner] was arrested at the [G]reyhound bus station at 709 5th Avenue South.  He was in possession of 4,815 Dilaudid pills that he obtained from New York.

Thereafter, the Petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective and that his guilty pleas were not knowing and voluntary.  At the post-conviction hearing, the Petitioner testified that he met with trial counsel two or three times prior to accepting the State's offer.  Each meeting lasted fifteen or twenty minutes.  The Petitioner said that he thought trial counsel was "a fine attorney" and "a good guy" but that he had "a lot . . . on his plate" and was "just a little overworked and overwhelmed" because he was transitioning from the public defender's office to private practice.

The Petitioner said that the discovery materials included six compact discs (CDs) of recordings from wiretaps.  The Petitioner and trial counsel discussed the discovery materials, but the Petitioner could not listen to the CDs because he did not have a device to play the discs or a transcript of the recordings.  The Petitioner acknowledged that he

saw the "takedown reports" and some supplemental reports from the Metro Nashville Police Department.

The Petitioner said that he wanted counsel to file a motion to suppress and take his case to trial instead of accepting a plea offer. The Petitioner thought evidence that pills were found on him at the jail would be suppressed because of Detective Young's preliminary hearing testimony that the Petitioner had no drugs or weapons when he was arrested. Nevertheless, trial counsel did not have the preliminary hearing transcribed and advised the Petitioner to accept a plea offer instead of pursuing the suppression issue. Trial counsel warned the Petitioner that the State would rescind plea offers and would not make any other offers if the Petitioner filed the motion. Additionally, trial counsel advised the Petitioner that he would likely receive a sentence of sixty years if he were convicted at trial. The Petitioner said that trial counsel did not discuss any potential defenses and discussed only the plea offer. The Petitioner said that he "felt threatened because [trial counsel said] if [the Petitioner went] through with a suppression hearing [he] would get 60 years, [he] would get this much time and never get an offer."

The Petitioner said that he thought the reason counsel never discussed a defense was because trial counsel was "busy." Nevertheless, the Petitioner said that he and trial counsel had a good working relationship.

The Petitioner said that the State made two plea offers. One included a sentence of fifteen years as a Range I, standard offender and required that he serve thirty percent of the sentence in confinement before he would be eligible for release. The other offer was a sentence of twenty years as an especially mitigated offender with release eligibility after serving twenty percent in confinement. Trial counsel advised the Petitioner that he would have a chance to be released sooner if he accepted the sentence of twenty years as an especially mitigated offender. The Petitioner asserted that trial counsel guaranteed he would be released after he served twenty percent of the twenty-year sentence.

After the Petitioner went to the penitentiary, "law clerks" advised him that he should have accepted the fifteen-year sentence. The Petitioner maintained that he thought his release would be automatic and that he did not realize the parole board would decide whether he would be released. The Petitioner stated that he had fourteen months' of jail credit at the time he was sentenced. The Petitioner said that he had been before the parole board but that he was denied release because it would "disrespect" a sentence of twenty years. The Petitioner did not think his release would have been denied if he had accepted the fifteen-year sentence.

The Petitioner said that trial counsel advised him to respond "yes, sir" or "no, sir" to all of the trial court's questions at the guilty plea hearing. Trial counsel told the Petitioner that he needed to convince the trial court that he wanted to plead guilty.

- 3 -

On cross-examination, the Petitioner said that he and trial counsel understood each other but that they "were just at two different points." The Petitioner wanted a suppression hearing, and trial counsel wanted the Petitioner to accept a plea offer. When asked if trial counsel told him to lie to the trial court during the guilty plea hearing, the Petitioner responded, "I wouldn't say he said lie to the judge, but make sure you answer yes or no to the questions and it doesn't seem like, you know, that it's not what you want." The Petitioner acknowledged that he lied to the trial court when he stated that he did not feel threatened, explaining that he felt he "was pushed into the plea." The Petitioner conceded that he made the decision to plead guilty.

When asked if he would have filed for post-conviction relief if the parole board had released him, the Petitioner initially stated, "Yeah, I probably would." However, when the post-conviction court asked, "If you were on parole now, out in society, you would still file this and risk facing what you said earlier, 60 years," the Petitioner responded, "No, no, not that."

The Petitioner said that Detective Young's testimony at the preliminary hearing was not the only reason he wanted a suppression hearing. The Petitioner said, "I wasn't on any parole, probation. I wasn't on any wiretaps. If my attorney would have investigated the conspiracy, I wasn't on no conspiracy. I wasn't on surveillance, no buys, no anything, nothing." The Petitioner acknowledged that he took a Greyhound bus from New York to Nashville. When he arrived in Nashville, the police took him into custody. He was searched, but the police found no drugs or weapons. The police handcuffed him, put him in the police car, and took him to another location. Approximately two hours later, the police searched him again and found over 4,000 pills in his pants. The Petitioner said that he did not put the pills in his pants and that the police did not plant the pills on him.

The Petitioner acknowledged that he had prior felony convictions but stated that he had never appeared before a parole board. He said that trial counsel promised him that he would get out of jail in two years, which included his jail credit.

Trial counsel testified that he had practiced law for approximately four years and that his practice was almost exclusively criminal defense. He began his practice in the public defender's office but left in December 2013 to practice with an association of attorneys. The other attorneys practiced criminal law, and they discussed cases with each other.

Trial counsel was appointed to represent the Petitioner in January 2014 after his previous attorney withdrew. The Petitioner was charged with two Class A felony drug offenses within a drug-free school zone. Trial counsel said that if convicted of the

- 4 -

charged offenses, the Petitioner would have been sentenced as a Range II, multiple offender and required to serve one hundred percent of the sentences in confinement.

Trial counsel said that he and the Petitioner had a good relationship. Trial counsel met with the Petitioner nine or ten times. They discussed the case against the Petitioner and the sentences he faced. Trial counsel acknowledged that he received a large amount of discovery materials and that he gave the Petitioner the materials relevant to his case. Trial counsel said that most of the discovery materials related to another case with which the Petitioner had little involvement but that he discussed the other case with the Petitioner. Trial counsel said that the other case concerned wiretaps. The Petitioner's telephone was not tapped, and his voice was on only two of the recorded telephone calls. Trial counsel said that he and the Petitioner "discussed those calls and the takedown primarily."

Trial counsel said that

> the police investigation showed that other individuals had gone back to New York and ridden back on a Greyhound bus. And they had been surveilling people, the main people in the case, them selling Dilaudid.
>
> And the police had information that [the Petitioner] had a one way ticket to New York, was coming back on a Greyhound bus and they assumed that that would be the opportunity to take them down and catch them with the drugs.

Trial counsel said that the Petitioner's case "basically would rise and fall with th[e] suppression motion," noting that the Petitioner was caught with the Dilaudid pills in his possession. The Petitioner never told trial counsel that the pills had been planted by someone else. Trial counsel said that the Petitioner was

> correct that at the preliminary hearing was something to the effect of the first officer that searched him didn't find the bag that [the pills] were in. But they were taken in a different location because the takedown happened in the terminal for [the] Greyhound bus station so they took them to a different location to investigate further and search further, and that's when they found the pills on [the Petitioner].

Trial counsel never asked the Petitioner how the pills got inside his pants, explaining, "I just kind of assumed where they were found on him that he knew how they got there." Trial counsel recalled that the pills were found in "some sort of contraption

that [the Petitioner] wore around his underwear that had the pills like wrapped in plastic Kroger bags." Trial counsel advised the Petitioner that in order to prevail on a suppression motion, the defense needed to argue that the State did not have probable cause to apprehend him. Trial counsel said that he and the Petitioner discussed whether to file a motion to suppress. Trial counsel advised the Petitioner that trying to win a suppression motion would "be a very uphill battle."

Trial counsel said that the State made an initial offer of twenty-five years at thirty percent. Through negotiations, trial counsel obtained alternate offers of fifteen years at thirty percent or twenty years at twenty percent. The State cautioned trial counsel that if the Petitioner filed a motion to suppress, the State would revoke all plea offers and proceed to trial. Trial counsel conveyed the information to the Petitioner and advised him that counsel "couldn't guarantee him getting an offer back ever." Trial counsel warned the Petitioner that if he were convicted a trial, he faced a lengthy sentence and that he would have to serve one hundred percent of that sentence in confinement; accordingly, pursuing a motion to suppress "was incredibly risky."

Trial counsel and the Petitioner discussed the alternate plea offers of fifteen years at thirty percent or twenty years at twenty percent. They also discussed the likelihood of the Petitioner's being granted parole. Trial counsel stated:

> I don't typically ever tell a client on a felony sentence that you could expect to get out on this particular day because there [are] so many factors. But we did talk about when he could see the parole board on the 20 at 20 because that's a pretty certain calculation. And the 15 at 30 and that's about four and a half to four years depending on which option he took.

Trial counsel said that he and the Petitioner discussed the Petitioner's time credits and what he could do to make himself a better candidate for parole, but trial counsel never promised that the Petitioner would be granted parole. Trial counsel specifically denied telling the Petitioner that he would be released in two years. Trial counsel said that the Petitioner had at least two "discussion dates" to consider the plea offers.

Trial counsel said that he was not overwhelmed while representing the Petitioner. He recalled that the Petitioner's case was difficult and that he received a lot of discovery materials. Trial counsel stated, "I could see how someone in his position feels that way when nothing is happening quickly in his case but I didn't feel overwhelmed." Trial counsel thought the Petitioner understood the plea agreement.

On cross-examination, trial counsel said that he advised the Petitioner the State would revoke all plea offers and proceed to trial if the Petitioner filed a motion to suppress. Trial counsel told the Petitioner the suppression motion would be difficult; therefore, filing the suppression motion and refusing the guilty plea offers was a "risky decision." Trial counsel told the Petitioner that if he lost the suppression motion, the trial would be difficult to win. Trial counsel did not file the motion to suppress but would have filed the motion if the Petitioner had been "adamant" that he wanted it filed.

Trial counsel recalled that the State offered fifteen years at thirty percent and that the Petitioner "was satisfied at that point saying that that's kind of what he wanted, he would rather plead." The Petitioner asked trial counsel to try to negotiate for twelve years at thirty percent. The State refused that offer but made a counteroffer of twenty years at twenty percent. Trial counsel thought that after the State made the plea offers, he and the Petitioner continued to discuss the motion to suppress, but they mainly discussed which plea offer to accept.

Trial counsel advised the Petitioner that

> if he wanted a shorter sentence to take the 15. And if he wanted the opportunity to see the parole board sooner, he could take the 20 but that he did have some things on his record[, namely an attempted homicide conviction and federal drug charges,] that might give the parole board pause about releasing him. So if he wanted the shorter guarantee[d] sentence to take the 15.

However, trial counsel never guaranteed the Petitioner that he would be granted parole because "no one can guarantee what the parole board is going to do." In response to questioning by the post-conviction court, trial counsel said that after the Petitioner pled guilty, he had "heard anecdotally that . . . there is a difference in the length of your sentence whether you can get to an annex or things like that, but I didn't know that."

The post-conviction court accredited trial counsel's testimony and found that trial counsel was not ineffective and that the Petitioner's guilty pleas were knowing and voluntary. Accordingly, the post-conviction court denied relief.

## II. Analysis

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the

conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the
> test, a failure to prove either deficiency or prejudice provides
> a sufficient basis to deny relief on the ineffective assistance
> claim. Indeed, a court need not address the components in
> any particular order or even address both if the [petitioner]
> makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the

- 8 -

right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Therefore, in order to comply with constitutional requirements a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the consequences of a guilty plea, and determine whether the defendant understands those consequences. Boykin, 395 U.S. at 244.

In determining whether the petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). Further, we note that "[a] petitioner's solemn declaration in open court that his plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations 'carry a strong presumption of verity.'" Dale Wayne Wilbanks v. State, No. E2014-00229-CCA-R3-PC, 2015 WL 354773, at *10 (Tenn. Crim. App. at Knoxville, Jan. 28, 2015) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

On appeal, the Petitioner contends that the proof at the post-conviction hearing established that trial counsel was ineffective and that the Petitioner entered his guilty pleas "without fully understanding the nature and consequences of what he was doing." The Petitioner maintains that he wanted trial counsel to file a motion to suppress but that trial counsel refused. He alleged that the State, through trial counsel, coerced him into pleading guilty by threatening to withdraw plea offers if the Petitioner filed a motion to suppress. The Petitioner asserts trial counsel guaranteed that if he accepted the twenty-year sentence, he would automatically be released from confinement in two years. The Petitioner contends that trial counsel failed to review the six CDs of discovery materials with him. The State asserts that the post-conviction court correctly denied post-conviction relief. We agree with the State.

The post-conviction court accredited trial counsel's testimony and found that trial counsel shared all relevant discovery materials with the Petitioner and discussed the evidence against him. Trial counsel also discussed the plea options with the Petitioner

and did not guarantee the Petitioner's release. Additionally, trial counsel advised the Petitioner that the risks involved in pursuing a suppression hearing were great, given the likelihood that the motion would not be successful, that the State would revoke all plea offers, and that the Petitioner then likely faced a conviction at trial. The Petitioner entered his guilty pleas in order to avoid the risk of being convicted at trial, receiving a sentence of sixty years, and having to serve one hundred percent of the sentence in confinement. The trial court determined that the Petitioner knowingly and voluntarily entered his guilty pleas and that his trial counsel was not ineffective. The proof at the post-conviction hearing does not preponderate against the judgment of the post-conviction court.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE